IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MAURICE ANTONIO BROWN<br>AIS #264844, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CASE NO. 3:18-CV-576-ECM-KFP<br>) [WO] |
| THERESA DYER, et al., | )<br>) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.     INTRODUCTION**

Plaintiff Maurice Brown, a pretrial detainee at the Russell County Jail, filed this 42 U.S.C. § 1983 action challenging the constitutionality of medical treatment he received for an injury to his right hand while incarcerated at the jail in April 2018. Doc. 1 at 2.[1] Brown seeks monetary damages from the two named Defendants: Theresa Dyer, a licensed practical nurse at the Russell County Jail, and Jack Randall, a correctional officer at the jail. *Id.* at 1, 3. Because Brown does not state otherwise, the Court liberally construes the pro se Complaint to seek relief from Defendants in their official and individual capacities.

Defendants filed an Answer and Special Report (Doc. 20) with supporting evidentiary materials, including affidavits and certified medical records, addressing Brown's claim of inadequate medical treatment, asserting that Brown received appropriate

---

[1] All cited documents and page numbers are those assigned by the Clerk of the Court in the docketing process.

treatment for his hand as determined by the jail's medical professionals, and denying deliberate indifference to Brown's medical needs.[2]

The Court ordered Brown to respond to Defendants' arguments and advised that his response should be supported by affidavits made under penalty of perjury and other appropriate evidentiary materials. Doc. 23 at 3. That Order specifically advised that, unless a party filed an opposition showing sufficient legal cause, the court may, without further notice to the parties, treat the special report and supporting evidentiary materials as a motion to dismiss or motion for summary judgment and rule on the motion in accordance with the law. Doc. 23 at 4. Brown then filed a response addressing his inability to properly exhaust the jail's grievance procedure, followed by an affidavit and supporting evidentiary materials in opposition to the Special Report. Docs. 26, 29. The Court finds it appropriate to treat Defendants' Special Report as a motion for summary judgment, and, upon consideration of the motion, supporting evidentiary materials, sworn Complaint, and Plaintiff's responses, concludes the motion is due to be GRANTED.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged

---

[2] Although Defendants also raise Brown's failure to exhaust his administrative remedies as an affirmative defense, Brown disputes this defense and argues that jail personnel did not properly respond to his grievances, which prevented him from properly exhausting the grievance procedure. Doc. 29 at 1–3. Therefore, the Court will address the merits of the claims presented by Brown.

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3). In determining whether a genuine issue for trial exists, the court must view all the evidence in a light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (internal citations and quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of

evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

### III.   IMMUNITY DEFENSES

#### A.   Sovereign Immunity for Claims Against Defendants in Their Official Capacities

To the extent Brown seeks monetary damages from Defendants in their official capacities, Defendants maintain that they are entitled to sovereign immunity as state actors operating the Russell County Jail. Doc. 20 at 10–11. The Court agrees. *See Free v Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that suits against sheriffs in their official capacities are suits against the entity they represent, making the State of Alabama the real party in interest); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1527 (11th Cir. 1990) (stating that sheriff's Eleventh Amendment immunity "extends to deputy sheriffs because of their traditional function under Alabama law as the sheriff's alter ego"); *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1430–31 (11th Cir. 1997) (holding that county jailers, like sheriffs and deputies, are entitled to Eleventh Amendment immunity for official capacity claims); *Turquitt v. Jefferson Cty., Ala.*, 137 F.3d 1285, 1288–89 (11th Cir. 1998) (stating that, for purposes of § 1983 liability, sheriffs, deputies, and jail employees act as officers of the state when supervising inmates and operating county jails).

Official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As the Eleventh Circuit has held:

> The Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Therefore, a state official may not be sued in his or her official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the State's immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). Section 14 of Article I of the Alabama Constitution states that "Alabama shall never be made a defendant in any court of law or equity," and the Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Id.* at 849; *see also Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) ("Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it.") (citing *Carr*, 916 F.2d at 1525); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity). Accordingly,

because Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities, they are entitled to summary judgment on all official-capacity claims.

> **B.** **Qualified Immunity for Claims Against Defendants in Their Individual Capacities**

Defendants also raise the defense of qualified immunity to claims against them in their individual capacities. Doc. 20 at 11–13. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit [for damages] in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)); *see also Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and [it] protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted); *see also Lassiter v. Ala. A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994). The Eleventh Circuit has determined that the law is "clearly established" for purposes of qualified immunity "only by decisions of the U. S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826–27 n.4 (11th Cir. 1997). Immunity questions should be resolved at the earliest possible stage of litigation. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Qualified immunity

7

is an affirmative defense to a request for damages, the sole relief sought in this case. *See Wood v. Strickland*, 420 U.S. 308, 315, n.6 (1975) ("Immunity from damages does not ordinarily bar equitable relief as well."), *overruled in part on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Gonzalez*, 325 F.3d at 1234. In this case, it is clear "that the defendants were acting within their discretionary authority[]" as jail officials at the time of the incidents at issue so "the burden shifts to [Brown] to show that qualified immunity is not appropriate." *Id.*; *see also Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010). To meet this burden, Brown must prove that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004); *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (same). The Court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." *Youmans*, 626 F.3d at 562; *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42) (holding that a court may analyze the elements "in whatever order is deemed most appropriate for the case").

## IV.     LEGAL STANDARD FOR PLAINTIFF'S DUE PROCESS CLAIMS

The actions alleged in the Complaint occurred while Brown was a pretrial detainee at the Russell County Jail. Brown's claims are subject to review under the Due Process Clause of the Fourteenth Amendment, which prohibits the imposition of punishment on

those who have not yet been convicted of a crime, rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which governs claims of convicted inmates. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). "[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1574 (11th Cir. 1985). As to these claims, the Eleventh Circuit has long held that "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Cottrell*, 85 F.3d at 1490; *Hamm*, 774 F.2d at 1574 (holding that for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and the Eighth Amendment); *Tittle v. Jefferson Cty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that whether the alleged violation is reviewed under Eighth or Fourteenth Amendment is immaterial).

Additionally, most federal courts, including the Eleventh Circuit, apply the deliberate indifference standard in deciding claims of pretrial detainees challenging medical treatment and other conditions. *See, e.g., Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017) (holding that a pre-trial detainee's claims challenging medical treatment provided to him "are evaluated under the same [deliberate indifference] standard as a prisoner's claim of inadequate care under the Eighth Amendment" and specifically refusing to extend the objective reasonableness

standard set forth in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *see also Smith v. Terry*, No. 2:13-CV-216-WHA, 2016 WL 4942066, at *3 (M.D. Ala. Aug. 15, 2016), *report and recommendation adopted,* No. 2:13-CV-216-WHA, 2016 WL 4923506 (M.D. Ala. Sept. 14, 2016); *Larson v. Stacy*, No. 2:14-CV-01085-WMA-JHE, 2015 WL 5315500, at *6–9 (N.D. Ala. Sept. 10, 2015) (applying objective reasonableness standard to pretrial detainee's excessive force claims but deliberate indifference standard to medical care claims). Therefore, the undersigned concludes that the deliberate indifference standard should be applied to Brown's claim of inadequate medical treatment instead of the objective reasonableness standard applied to the excessive force claim before the Supreme Court in *Kingsley*.

**V.   DISCUSSION**

Brown asserts Corrections officer Randall did not refer him to the medical staff upon seeing that his right hand was swollen and that Nurse Dyer delayed telling him the results of the initial x-ray of his right hand and denied him adequate medical treatment for his hand.[3] However, as discussed below, Brown fails to demonstrate a genuine dispute of material fact sufficient to preclude summary judgment in favor of Defendants.

---

[3] To the extent Brown attempts to raise completely new legal claims in his response to the Special Report, that attempt to amend the Complaint is ineffective. The Court limits its review on summary judgment to the allegations asserted in the Complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (recognizing that plaintiff may not amend complaint through argument in a brief opposing summary judgment); *Ganstine v. Sec'y, Fla. Dep't of Corr.*, 502 F. App'x 905, 909–10 (11th Cir. 2012) (holding that plaintiff may not amend his complaint at the summary judgment stage by raising new claim or presenting new basis for pending claim); *Chavis v. Clayton Cty. Sch. Dist.*, 300 F.3d 1288, 1291 (11th Cir. 2002) n. 4 (11th Cir. 2002) (refusing to address new theory raised during summary judgment because plaintiff had not properly amended complaint).

### A.     Deliberate Indifference

Jail and medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To state a claim of deliberate indifference to a serious medical need, a plaintiff must establish three specific elements: (1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). A plaintiff is required to establish not merely knowledge of a condition but also knowledge of the necessary treatment coupled with a refusal to treat or a delay in treatment. *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted). To establish these elements, an inmate must show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need[,] and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (holding that defendant must know of and disregard excessive risk to prisoner's health or safety for liability to attach).

#### 1.     Objective Components

Regarding the objective components of a deliberate indifference claim, a plaintiff must show an objectively serious medical need and a response by a defendant that was poor enough to constitute an unnecessary and wanton infliction of pain, not simply accidental inadequacy, a negligent diagnosis or treatment, or even medical malpractice

under state law. *Taylor*, 221 F.3d at 1258 (citation omitted). *See also Estelle*, 429 U.S. at 106 (stating that neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer v. Brennan*, 511 U.S. 825, 835–36 (1994) (holding that allegations of negligence in diagnosing of treating medical condition does not state claim under Eighth Amendment or establish required reckless disregard of substantial risk of harm); *Kelley v. Hicks*, 400 F.3d 1282, 1285 (11th Cir. 2005) (recognizing that mere negligence is insufficient to establish deliberate indifference); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (affirming summary dismissal of complaint alleging "misdiagnosis and inadequate treatment" because it was no more than medical negligence); *Barr v. Fla. Dep't of Corr.*, No. 10-21890-CV, 2011 WL 1365552, at *4 (S.D. Fla. Apr. 11, 2011) (finding Plaintiff due no relief when misdiagnosis that led to improper insertion of feeding tube amounted to nothing more than negligence). Thus, mere accidental inadequacy, negligence in diagnosis, negligence in treatment, and medical malpractice do not establish the objective component of deliberate indifference claims.[4]

---

[4] The same is true for claims reviewed under the objective reasonableness standard applied in *Kingsley*. When challenging the constitutionality of medical care under either standard, the facts must allege more than medical malpractice, misdiagnosis, accidents, or poor exercise of medical judgment; an allegation of negligence is insufficient to state a due process claim. *Simpson v. Holder*, 200 F. App'x 836, 839 (11th Cir. 2006) (citing *Estelle*, 429 U.S. at 104–07 (recognizing that medical malpractice by physician is insufficient basis for deliberate indifference and that evidence must show harmful acts that were intentional or reckless) and *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986)); *see also Kingsley*, 576 U.S. at 395–96 (stating that the "legally requisite state of mind" in determining the objective reasonableness of a physician's conduct requires a purposeful, knowing, or criminally reckless state of mind because negligently inflicted harm "is categorically beneath the threshold of constitutional due process") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

### 2. Subjective Components

With respect to the subjective components of a deliberate indifference claim, a plaintiff must establish deliberate indifference showing that the defendant "knows of and disregards an excessive risk to inmate health or safety," the defendant is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and the defendant draws that inference. *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition for finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. When medical personnel attempt to diagnose and treat an inmate, the fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery Cty. Detention Facility*, 646 F. App'x 777, 780 (11th Cir. 2016). "Medical treatment violates the [E]ighth [A]mendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted)). but the

Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for

13

medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal quotation marks omitted). "A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm*, 774 F.2d at 1575 (holding that mere fact inmate desires different treatment does not amount to deliberate indifference). The law is equally clear that an inmate is not entitled to referral to an outside physician for evaluation. *Dixon v. Jones*, No. 3:11CV-323-WHA, 2014 WL 6982469, at *9 (M.D. Ala. Dec. 9, 2014) (finding that jail physician's denial of second opinion did not constitute deliberate indifference); *Arzaga v. Lovett*, No. 2:11-CV-3303-JAM-EFB, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that preference for second opinion was not enough to establish deliberate indifference); *Amarir v. Hill*, 243 F. App'x 353, 354 (9th Cir. 2007) (holding that denial to see outside specialist was not deliberate indifference).

    **B.**    **Allegations Against Nurse Theresa Dyer**

Brown complains Dyer failed to advise him of the results of an x-ray within a timely manner and denied him adequate medical treatment for his hand. Doc. 1 at 2. Dyer denies acting with deliberate indifference to Brown's medical needs and maintains Brown had continuous access to health care personnel and received appropriate treatment from medical professionals. The medical records demonstrate that, upon Brown's submitting a request for an evaluation, medical personnel at the Russell County Jail evaluated his hand for injury, assessed the need for treatment, prescribed medication, ordered x-rays, and

provided treatment in accordance with their professional judgment. Doc. 20-7 at 2–3; Doc. 20-8 at 2; Doc. 29 at 34.

Brown states he first requested treatment on April 25, 2018, and the medical records show that Dr. Pamela Shaw examined Brown on this date. Doc. 1 at 2; Doc. 20-7 at 2. Dr. Shaw observed "mild edema" or swelling on Brown's hand, ordered an x-ray, and provided Naproxen for pain. Doc. 20-7 at 2. She also ordered an increase in Brown's prescription for Trazadone due to his continued complaint of insomnia. Doc. 20-7 at 3. The x-ray was performed on April 27, 2018, with the following results: "All the carpal joints, metacarpophalangeal, proximal and distal interphalangeal joints are well aligned. No fracture or dislocation is seen. No appreciable soft tissue swelling is seen. Questionable chronic osseous irregularity along the base of the fifth metacarpal."[5] Doc. 20-8 at 2. On April 30, 2018, Dr. Shaw noted the negative x-ray results in Brown's medical records. Doc. 20-7 at 3. Another x-ray was taken on September 24, 2018, and the results were similar to the previous x-ray, showing only "articular changes of arthritis and degeneration. . . . No acute osseous abnormality of the right hand." Doc. 29 at 34.

Under these circumstances, the Court concludes that treatment by the medical personnel at the Russell County Jail did not violate Brown's constitutional rights. Nothing about the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. As

---

[5] The identification of the injury at the base of the fifth metacarpal or joint as a "chronic osseous irregularity" indicates this injury is one that developed over a period of time. Specifically, as jail personnel advised Brown, this irregularity resulted from "an old injury before you came into" the Russell County Jail. Doc. 29 at 20.

15

set forth above, whether additional techniques or forms of treatment should have been ordered is a classic example of judgment and not a basis for liability under the Eighth Amendment. *Adams*, 61 F.3d at 1545 (internal citation omitted); *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991) (holding failure to pursue alternative means of treating inmate's condition does not go beyond negligence to deliberate indifference); *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding simple divergence of opinions between medical personnel and inmate does not establish a violation of the Eighth Amendment).

With respect to Brown's allegation that Dyer should have advised him of his x-ray results sooner, this allegation simply does not constitute deliberate indifference to a serious medical need, particularly when the x-ray results were negative for any type of serious injury. In addition, Brown has presented no evidence that Dyer knew treatment of Brown's hand created any substantial risk to his health, that she consciously disregarded that risk, or that Brown even had a serious medical need in the first place. Instead, the records establish Brown suffered no fracture or dislocation when he rolled his hand in the cell door, that his hand exhibited only mild swelling for a few days afterward, and that he received medical treatment for the injury. Doc. 20-8 at 2. Medical personnel deemed the questionable "irregularity" in his hand a chronic issue, not a recent one. Doc. 20-2 at 2. The record is devoid of any evidence showing that Dyer acted with deliberate indifference to Brown's medical needs, and it is clear that the medical treatment provided to Brown was objectively reasonable.

### C. Allegations Against Officer Jack Randall

The evidentiary materials submitted by Defendants show that Officer Randall is not involved in decisions regarding medical treatment of inmates. *See* Doc. 20-4 at 3 ("Other than basic first aid, I do not have any specific medical training. It is our policy to defer to and rely upon the professional opinions of nurses and doctors provided within the Russell County Jail."). "Medical care is available twenty-four hour[s] a day for emergencies and on a regular scheduled basis for non-emergencies. Sick call is conducted Monday thru Sunday. [Inmates] must submit a[n] inquiry for medical evaluation to be seen during sick call. . . . Sick call is conducted by a licensed practical nurse or a registered nurse. To see the doctor, a nurse must refer the inmate." Doc. 20-9 at 14.

According to Randall, Brown complained that he had hurt his right hand, which prompted Randall to tell Brown "to fill out a medical inquiry explaining the problem he was experiencing with his hand," which is necessary to receive a sick call appointment with medical personnel. Doc. 20-4 at 3. Randall thought Brown's hand looked swollen, so he relayed that information to Dyer. Doc. 20-3 at 3. As Brown acknowledges in the Complaint, he first sought treatment for his hand from the jail's medical personnel on the morning of April 25, 2018, and was examined by Dr. Pamela Shaw that same afternoon. Doc. 1 at 2; Doc. 20-7 at 2. Randall states he had no reason to believe "that the services provided by the nurses and doctors at the Russell County Jail [were] anything but satisfactory." Doc. 20-4 at 3. Brown has provided no evidence indicating otherwise. Accordingly, the Court finds Brown has failed to establish that Randall acted with

deliberate indifference, as Brown has not shown that Randall was aware of facts establishing "an objectively serious medical need" or that he consciously disregarded any known serious risk to Brown's health. *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that official must know of and then disregard an excessive risk of harm for liability to attach); *Johnson*, 145 F.3d at 168 (holding that, for deliberate indifference, defendant must have actual knowledge of a serious condition, not just symptoms, and ignore known risk to serious condition).[6]

## VI.   CONCLUSION

For the reasons stated above, Defendants are entitled to sovereign immunity for claims made against them in their official capacities, and they are entitled to qualified immunity from Plaintiff's request for monetary damages for claims against them in their individual capacities, as there is no evidence of a violation of Brown's constitutional rights by acting with deliberate indifference. Therefore, summary judgment is due to be granted in favor of Defendants on Plaintiff's claims alleging deliberate indifference to his medical needs in violation of the Eighth Amendment.

---

[6] Although the Complaint does not clearly articulate this theory, to the extent Brown seeks to hold Randall liable for treatment provided by another individual—a medical professional—the law "does not impose upon [jailers] a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong." *Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007) (citation omitted). Supervisory jail officials are entitled to rely on medical decisions made by medical professionals who are responsible for administering medical care to inmates. *Id*. (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988); *Williams v. Limestone Cty., Ala.*, 198 F. App'x. 893, 897 (11th Cir. 2006)).

Accordingly, the Magistrate Judge RECOMMENDS:

1. Defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of Defendants.

3. This case be dismissed with prejudice.

4. Other than the filing fee assessed Plaintiff in this case, no costs be taxed.

It is further ORDERED that by **August 6, 2021**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 23rd day of July, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE